United States District Court
Southern District of Texas
**ENTERED**
July 30, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| SONIA HERRON, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-136 |
| | § | |
| FEDERAL EXPRESS | § | |
| CORPORATION, | § | |
| Defendant | § | |

<u>**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**</u>

The Court is in receipt of the Motion for Summary Judgment filed by Defendant Federal Express Corporation (hereinafter, "FedEx").  Dkt. No. 53.  For the reasons provided below, it is recommended that the Court **GRANT** FedEx's Motion and **CLOSE** this civil action.

## I.  Jurisdiction

The Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331.

## II.  Background

Plaintiff Sonia Herron's First Amended Complaint (hereinafter, Herron's "Complaint" or "live Complaint") asserts claims against her former employer, FedEx, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "the Act").  Dkt. No. 35 at 3.  Herron is an African American woman and claims that FedEx violated her civil rights under the Act by discriminating against her based upon her race and sex.  She also claims that FedEx forced her to endure a hostile

work environment and retaliated against her for engaging in activity that is protected under the Act. *Id*. at 5-6. Among other things, she seeks reinstatement, backpay, attorney's fees, court costs, various types of pecuniary and nonpecuniary damages, and injunctive and declaratory relief. *Id*. at 6.

FedEx filed its Motion for Summary Judgment on October 13, 2020. Dkt. No. 53. FedEx denies Herron's allegations and states that it is entitled to summary judgment on all of her claims. *Id*. at 6, 25. After receiving several unopposed extensions, Herron filed her "Response in Opposition" to FedEx's Motion (hereinafter, Herron's "Response"), along with accompanying exhibits on March 5, 2021. Dkt. Nos. 71-74. FedEx filed its "Reply" on March 17, 2021. Dkt. No. 75. The parties have completed discovery and this case is now ripe for review.

### III.  Summary Judgment Standard

The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a). In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson*, 477 U.S. 242, 248. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Id.* Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict. If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not issue. *Id.* at 249.

The movant seeking summary judgment bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the resisting party to present affirmative evidence to defeat the motion. *Anderson*, 477 U.S. 242, 257. All facts and inferences drawn from those facts must be viewed in the light most favorable to the party resisting the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## IV. Discussion

Herron's Complaint asserts civil rights claims which fall into three categories. Specifically, she asserts that, due to or because of her race and sex, FedEx: (1) discriminated against her; (2) forced her to endure a hostile working environment; and (3) retaliated against her for engaging in activity that is protected under the Act. Dkt. No. 35 at 5-6. Her Complaint makes the following allegations in support of her claims:

1. She worked for FedEx for ten years at its Harlingen, Texas facility until she was terminated on October 10, 2017. Dkt. No. 35 at 3. While working as a gatekeeper, FedEx subjected her to a working environment that was hostile to her due to her race and sex. When she complained about FedEx's discriminatory conduct, it retaliated against her, first disciplining her, and then terminating her employment. *Id.*

2.  In 2012, a male coworker sent her picture of his genitalia.  *Id*.  He told her that, after seeing Herron, his girlfriend had said that she "'liked what she saw and wanted a threesome.'"  *Id*. at 3-4.  She reported the two texts to managers Manuel Rodriguez and Hiram Pena.  These managers encouraged her not to file a formal complaint.  *Id*. at 4.

3.  In December of 2014, she filed a complaint with FedEx's human resources department to report that one manager, Raymond Hand, and two employees, Rodolfo Coronado and Aldo Tamez, where taking longer lunches than allowed and falsifying their timecards.  These individuals discovered her complaint.  News of her complaint leaked, she was ostracized, and the attitudes of the managers and employee towards her changed.  *Id*.  When she received an "employee of the month" award, one employee stated, "'Wow, if you throw someone under the bus you get employee of the month.'"  *Id*.

4.  Soon thereafter, a new coworker, William Lopez, arrived from New York City and began using the "n-word" in Herron's presence.  Herron initially reported this to three station managers, Raymond Hand, Manuel Rodriguez, and Ruth Quinones.  Despite reporting that Lopez's actions offended her, the three managers did nothing.  Lopez continued to use the epithet and Herron reported it to a senior manager, Jeffery Feurtado, on March 20, 2015.  Herron informed Feurtado that she had previously reported Lopez, but nothing had changed.  *Id*.  Feurtado responded by stating that he could not stop Lopez from using the word.  He also stated that Lopez "'was from the big city and that's how they talk.'"  *Id*.  Later, Feurtado told Herron that he had "given Lopez a writeup" and asked her to inform him if Lopez used the word again.  *Id*.  Another employee told Herron that management did not discipline Lopez, did not care about his use of the epithet, and wanted Herron terminated.  FedEx did not fire Lopez, but it did fire an African-American man for an "alleged policy violation."  *Id*.

5.  On April 11, 2016, FedEx disciplined Herron in writing for allegedly leaking information that was already generally known and for violating the company's confidentiality policy.  *Id.* at 5.

6.  On May 16, 2017, Herron filed a complaint against a Hispanic female coworker, Belinda Garza, for workplace violence.[1]  FedEx did not discipline Garza, but it suspended Herron without pay.  *Id.*

7.  On September 28, 2017, Herron refused to provide a Hispanic male coworker with keys to a vehicle that he was unauthorized to operate.  After the coworker asked Herron for the keys, Herron complained to manager Ruth Quinones.  FedEx suspended Herron while it investigated her complaint.

8.  FedEx did not investigate Herron's complaints that she had been called "'Felicia' ([i]n reference to a Black female character in the movie 'Friday') or 'Madea' (the Black female character portrayed by Tyler Perry in his movies) or 'Sonia la Ronia' which means 'dog mange' in Spanish."  *Id.*  However, FedEx did investigate complaints that Herron had called the Hispanic male employee "panson" which "means 'fat stomach' in Spanish."  *Id.*

9.  On October 10, 2017, FedEx fired Herron, allegedly because FedEx had reprimanded her three times within the five-year period leading up to her termination. FedEx fired Herron despite its policy to terminate an employee "if there are three (3) reprimands within a one-year period."  *Id.*  Herron filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 29, 2017, "based on the suspension and other acts of discrimination."  *Id.*[2]

---

[1]  The record indicates that Herron reported Garza because Garza yelled at her while standing so close that spit landed on her face.  Dkt. No. 72 at 117.

[2]  Herron asserts that FedEx fired her after she filed her 2017 Charge of Discrimination with the EEOC.  Dkt. No. 35 at 5; Dkt. No. 71 at 4-5.  However, the record shows that FedEx fired her on

In its Motion for Summary Judgment, FedEx largely denies Herron's factual allegations, stating that she was a toxic influence at the facility and that her own improper, unprofessional actions caused her termination.  Dkt. No. 53 at 6.

> During her ten years there, Plaintiff actively schemed to get co-workers in trouble, checking-up on her peers and compiling information to use against them.  She started rumors and spread gossip.  Her complaint history at FedEx shows that no one was immune from her criticism and that, no matter what management did, her desire for "action" in response to petty complaints was never appeased.  Ultimately, Plaintiff lost her job because she disrupted the station.

*Id*.  FedEx asserts that summary judgment is appropriate because Herron's claims are either time-barred, procedurally barred, or unsupported by admissible evidence.  *Id*. at 2.

**A.  Herron's Claims Regarding Conduct and Events Occurring Before April 30, 2016**.  The parties agree that Herron filed her first "Charge of Discrimination" (hereinafter, "2016 Charge") with the EEOC on April 30, 2016.  *See* Dkt. No. 53-1 at 8; Dkt. No. 74-1 at 3.  FedEx states, and Herron does not deny, that the EEOC responded to this 2016 Charge with a "Dismissal and Notice of Rights" (hereinafter, "Dismissal Notice") on May 26, 2016.  *See* Dkt. No. 53-1 at 10.  The EEOC's Dismissal Notice stated that it was unable to conclude the FedEx had violated Herron's rights.  *Id*.  It also notified Herron that, if she wished to file a lawsuit asserting federal claims against FedEx, she must do so within 90 days of receiving the Dismissal Notice or her federal claims would be lost.  *Id*.  Herron did not file suit until June 21, 2019.  *See* Dkt. No. 1-1 at 7.

Herron's 2016 Charge alleged that FedEx had discriminated against her and retaliated against her based upon her race and sex.  Dkt. No. 53-1 at 8.  She specifically alleged that FedEx had warned her in writing on April 11, 2016, in retaliation for filing a

---

October 10, 2017, and she did not file her 2017 Charge with the EEOC until October 18, 2017.  Dkt. No. 72 at 121; Dkt. No. 53-1 at 86.

complaint against a White male employee for "falsifying his and his buddies time cards." *Id*. (errors in original).  She also alleged that FedEx had decreased her hours by skipping over her when overtime was available.  *Id*.  Herron did not check the "continuing action" box on the charge form and provided no other facts in support of her allegations.  *Id*.  Her 2016 Charge did not allege that FedEx subjected her to a hostile working environment based on her race and sex.  *Id*.

FedEx argues that Herron's claims against it for conduct and events occurring before she filed her 2016 Charge are now time-barred.  Dkt. No. 53 at 15-17.  Herron's Complaint and Response do not argue that her claims are timely, or otherwise address FedEx's argument.  *See generally* Dkt. Nos. 35 and 71.  "A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue-letter from the EEOC."  *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (citing 42 U.S.C. § 2000e–5(f)(1)).  Courts must strictly construe the ninety-day requirement as it is analogous to a statute of limitations.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002); *Espinoza v. Missouri Pacific R.R. Co.*, 754 F.2d 1247, 1248 n. 1 and 1250 (5th Cir. 1985); *Lofton v. Hawkins*, No. 3:19-CV-1231-N-BK, 2019 WL 7762202, at *2 (N.D. Tex. Dec. 17, 2019), *report and recommendation adopted*, No. 3:19-CV-1231-N-BK, 2020 WL 470282 (N.D. Tex. Jan. 28, 2020).  Having failed to comply with the ninety-day requirement, Herron's claims against FedEx for conduct and events occurring before she filed her 2016 Charge are time-barred and subject to summary judgment.  *See id*.

**B.  Herron's Claims Regarding Conduct and Events Occurring After April 30, 2016**.  With respect to conduct and events occurring after April 30, 2016, Herron asserts that, due to, or because of, her race and sex, FedEx: (1) discriminated against her; (2) forced her to endure a hostile working environment; and (3) retaliated

against her for engaging in activity that is protected under the Act. Dkt. No. 35 at 5-6.
The Court will address each of these claims, although not in the order presented.

**(1)  Herron's Hostile Work Environment Claims**.  In addition to the above-summarized allegations contained in her Complaint, Herron's Response to FedEx's Motion for Summary Judgment asserts the she was frequently subjected to harassment and a hostile work environment due to her race and sex.  *See generally* Dkt. No. 71. Referencing her deposition testimony, for example, Herron contends as follows:

> Plaintiff was subjected to racial remarks referring to her african-american butt, was called "pantera negra", which means black panther and was told "bye-felicia".  These remarks among others occurred daily.  Her co-workers would also refer to her as "Madea".  When working at the catwalk, Plaintiff would get these remarks from male co-workers on a daily basis. Plaintiff's supervisor Mr. Furtado commented on her long hair and how it looked nice because she always wore her hair up.  Another time Plaintiff was bending over, picking up a heavy package when a male co-worker made gestures that he wanted to do stuff to her from behind.  On another occasion another male co-worker stated that he wanted to get Plaintiff from behind to have sex with her.  There were other instances where they would say, "Once you go black, you don't go back" when she would walk down the catwalk.  The male co-workers asked her if it was true.  On another occasion, Plaintiff was asked if she knew who Mandango was.  Plaintiff discovered later that Mandango was a porn-star.  Plaintiff was called "Nigger" by a co-worker that had transferred from Brooklyn, New York.  Plaintiff complained to Mr. Furtado.  His reply was that he was from the big city and that was nothing he could do.  That's the way they talk.  On several occasions when unloading supplies, a male co-worker would try to lock Plaintiff in the vehicle with him.  On one occasion, in an email to Mr. Furtado from management, Plaintiff was referred to "piss-poor".  Upon arrival of a new employee that transferred from Hawaii, touring the facility with Ray Hand, he was told to stay away from the "black lady Sonia".  On several occasions at least three or four times a month, Plaintiff was called "chango", which means "monkey".  Plaintiff felt sexually harassed by a male co-employee. When they were on check rides, he would always ask her if she had a boyfriend and why she would stay within her own race.  Plaintiff was made to feel very uncomfortable because when they were in the car, he would always reach over and pretend that he had dropped something.  Plaintiff complained to Mr. Hand who was told by Mr. Gilbert that she was insubordinate. Mr. Hand asked Plaintiff to write a statement.  He called her into his office, tore the letter up and told her, "You just need to follow and do what I'm telling you."

*Id*. at 5-6 (errors in original).

FedEx argues that Herron's hostile work environment claims are procedurally barred because she failed to raise the claims with the EEOC; and, therefore, they are not exhausted.  Dkt. No. 53 at 17-18.  Herron's Complaint and Response do not address FedEx's argument, or otherwise argue that her claims are exhausted.  *See generally* Dkt. Nos. 35 and 71.

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies.  *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-79; *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789, (5th Cir. 1996).  Administrative exhaustion "occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue," *Taylor*, 296 F.3d at 379, or when she "files a timely charge with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao*, 96 F.3d at 789.  The exhaustion requirement provides the employer with notice of the plaintiff's claims.  *EEOC v. Shell Oil Comp*., 466 U.S. 54, 77 (1984); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd*., 40 F.3d 698, 711–12 (5th Cir. 1994).  It also provides the agency with an opportunity to resolve the claims before the plaintiff files suit.  *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) ("The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws.").

A plaintiff who fails to exhaust her hostile work environment claim may not proceed in federal court with the claim merely because she has exhausted other types of Title VII claims.  *See Anderson v. Sikorsky Support Servs., Inc*., 66 F. Supp. 3d 863, 871 (S.D. Tex. 2014) (collecting cases and noting that hostile work environment and discrimination claims are "distinct;" thus, ordinarily, the exhaustion of one type of claim

will not exhaust the other); *Trevino v. SAIA Motor Freight Line, LLC*, No. 4:20-CV-00825-P-BP, 2021 WL 1009317, at *3–5 (N.D. Tex. Jan. 26, 2021), *report and recommendation adopted*, No. 4:20-CV-00825-P, 2021 WL 977096 (N.D. Tex. Mar. 16, 2021) (same).  To proceed in federal court, the plaintiff may either explicitly present her hostile work environment claim to the EEOC; or, she may present a claim to the EEOC that logically gives rise to her hostile work environment claim.  Put another way, if her hostile work environment claim is within the scope of the EEOC investigation that "can reasonably be expected to grow out of" her EEOC charge, then she will be allowed to proceed with her claim in federal court.  *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *see also Filer v. Donley*, 690 F.3d 643, 647 (same).  As the Fifth Circuit Court of Appeals explained in *Pacheco v. Mineta*:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers.  On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally.  On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims.  Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance."  With that balance in mind, this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination."  We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

448 F.3d 783, 788–89 (internal citations omitted).  *See also Martin v. Winn–Dixie Louisiana, Inc.,* No. 3:13–CV–00682–JWD, 2015 WL 1281943, at *6 (M.D. La. Mar. 20, 2015) ("[T]he plaintiff's administrative charge will be read somewhat broadly, in a fact-

specific inquiry into what EEOC investigations it can reasonably be expected to trigger.")
(citations omitted); *Williams v. E.I. du Pont de Nemours & Co*., 154 F. Supp. 3d 407, 416-
417 (M.D. La. 2015) (same).

The Supreme Court and the Fifth Circuit have defined a hostile work environment
as a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is
sufficiently severe or pervasive to alter the conditions of the victim's employment and
create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.
101, 122 (2002); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009)
(same). To establish a prima facie hostile work environment claim, a plaintiff must show
that: (1) she belongs to a protected group; (2) she was subjected to unwelcomed
harassment; (3) the harassment was based upon her protected-group status; (4) the
harassment affected a term, condition, or privilege of her employment; and, (5) her
employer knew or should have known about the harassment in question and failed to take
prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).
Determining whether a workplace is hostile requires a court to consider the totality of the
circumstances by focusing on "the frequency of the discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work performance." *Id*. (citations
omitted); *Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 347 (5th Cir. 2007)
(same). The hostile conduct at issue must be objectively and subjectively offensive to
qualify as severe or pervasive enough to alter the conditions of the plaintiff's employment.
*Harris v. Forklift Sys*., 510 U.S. 17, 21-22 (1993).

Herron filed a "Charge of Discrimination" (hereinafter, "2017 Charge") with the
EEOC on October 18, 2017. Dkt. No. 53-1 at 86. The 2017 Charge alleged discrimination

based upon race and sex, and retaliation based upon race and sex.  *Id.*  In support of these

allegations, the Charge provided as follows:

> I began my employment with Respondent on or about January 7, 2008.  My
> most recent position was Gatekeeper.  During my employment, I was
> treated differently then both male and non-Black Handlers and
> Gatekeepers.  I was subjected to different terms and conditions of
> employment, including but not limited to being excluded from company
> updates and information, having my complaints ignored, being suspended
> and terminated while both male and non-Black Handlers and Gatekeepers
> were not.  I complained to Respondent of discrimination.  I was terminated.
>
> I believe that I was discriminated against because of my race, Black, and sex,
> female, and in retaliation for engaging in protected activity, in violation of
> Title VII of the Civil Rights Act of 1964, as amended.

*Id.* (errors in original).  Herron did not check the "continuing action" box on the charge

form but indicated that FedEx's discrimination took place between "1/7/2008" and

"10/10/2017."  *Id.*  She provided no other facts in support of her allegations.  *Id.*

Herron has not shown, or even argued, that she has exhausted her hostile work

environment claims.  Like her 2016 Charge, her 2017 Charge does not explicitly raise a

hostile work environment claim.  Further, nothing in either Charge indicates that she

endured a workplace "permeated with discriminatory intimidation, ridicule, and insult,"

that was "severe or pervasive" enough to create an abusive working environment or alter

the conditions of her employment.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 122; *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328.  Her Charges do not assert

that employees or managers at FedEx belittled, bullied, teased, or harassed her due to her

race or sex, nor do they assert that she complained of these things to FedEx to no avail.

Thus, because a hostile work environment investigation could not reasonably grow out of

the allegations in Herron's Charges, FedEx's Motion for Summary Judgment should be

granted as it pertains to her hostile work environment claims. *See id*.[3] *See also Gates v. Lyondell Petrochemical Co.*, 227 F. App'x 409, 409 (5th Cir. 2007) (Plaintiff's hostile work environment claim "could not be expected to grow out of her [EEOC] discrimination charge when she charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment.") (unpublished); *Trevino v. SAIA Motor Freight Line, LLC*, No. 4:20-CV-00825-P-BP, 2021 WL 1009317, at *4–5 (dismissing a plaintiff's hostile work environment claim for lack of exhaustion where his EEOC charge did not mention a hostile environment or pervasive harassment, and only alleged that his employer: did not inform him of promotional opportunities, promoted less senior non-Hispanic workers; and treated Hispanic workers unfairly); *Williams v. E.I. du Pont de Nemours & Co.*, 154 F. Supp. 3d 407, 418 (dismissing plaintiff's hostile work environment claim for lack of exhaustion where, "even a liberal reading" of the plaintiff's EEOC charge did "not reasonably lead to a hostile work environment claim growing out of his allegations of discrimination and retaliation."); *Anderson v. Sikorsky Support Servs., Inc.*, 66 F. Supp. 3d 863, 871 (dismissing plaintiff's hostile work environment claim for lack of exhaustion because his EEOC charge failed "to set forth allegations that any coworkers bullied, teased, belittled, or otherwise treated him

---

[3]  Until recently, there was a "disagreement in this circuit on whether a Title–VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction." *Ruiz v. Brennan*, 851 F.3d 464, 472 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7). However, the United States Supreme Court has recently resolved the question, holding that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty., Texas v. Davis*, ––– U.S. –––, 139 S. Ct. 1843, 1850, 204 L.Ed.2d 116 (2019). *See also T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1051 (5th Cir. 2020) ("We note, however, that the Supreme Court has recently held that Title VII's administrative exhaustion requirement is not jurisdictional but is, instead, a mandatory claim-processing rule.") (citing *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, at 1851). Thus, with respect to Herron's hostile work environment claims, rather than dismiss the claims without prejudice for lack of jurisdiction, it is recommended that the Court grant FedEx's Motion for Summary Judgment.

negatively based on his race, or that Defendant did not follow up on his reports of harassment."); *Evans–Rhodes v. Northwest Diagnostic Clinic, P.A.*, 2014 WL 645361, \*3, \*5 (S.D. Tex. Feb. 19, 2014) (dismissing hostile work environment claim for lack of exhaustion where nothing in the plaintiff's EEOC charge suggested that the EEOC would need to look into whether a hostile work environment existed).

**(2) Herron's Discrimination Claims**. Herron's Complaint and Response[4] largely fail to distinguish FedEx's alleged retaliatory acts from its alleged discriminatory acts. Her Complaint and Response also accuse FedEx of discriminatory conduct without specifying when the conduct occurred. *See generally* Dkt. Nos. 35 and Dkt. No. 71. Herron generally alleges that, during her time at the company, FedEx improperly: (1) orally reprimanded her; (2) disciplined her in writing; (3) failed to investigate her complaints; (4) ripped up one of her complaints; (5) dissuaded her from reporting harassment and offensive conduct; (6) failed to stop or punish the perpetrators of the harassment and offensive conduct; (7) investigated her and suspended her without pay during the investigations; (8) failed to assist her in her attempts to obtain promotion; (9) failed to promote her; and, (10) terminated her, even though its policies did not require termination. *Id*. With respect to conduct that Herron specifically identifies as occurring after April 30, 2016, Herron states that:

1. FedEx suspended her without pay on or about on May 16, 2017, after she filed a complaint against a Hispanic female coworker, Belinda Garza, for workplace violence. FedEx did not discipline Garza. Dkt. No. 35 at 5; Dkt. No. 71 at 4.

2. FedEx suspended her on or about September 28, 2017, while it investigated a complaint that she filed. Her complaint concerned a dispute that occurred that same day between herself and a Hispanic male coworker. This dispute arose when the coworker insisted that she

---

[4] The only briefing Herron has submitted in support of her claims is contained in her Complaint and Response.

provide him with keys to a vehicle that he was unauthorized to operate and she refused. Dkt. No. 35 at 5; Dkt. No. 71 at 4. FedEx investigated this coworker's complaint that she had called him "panson," which means "fat stomach" in Spanish. *Id.* But, it did not investigate her complaints that he called her "Sonia la Ronia," which is a Spanish reference to "dog mange." *Id.*

3. During this investigation, FedEx also failed to investigate her claims that coworkers had called her other names due to her race, such as "'Felicia' ([i]n reference to a Black female character in the movie 'Friday') or 'Madea' (the Black female character portrayed by Tyler Perry in his movies)[.]" Dkt. No. 35 at 5; Dkt. No. 71 at 4.

4. FedEx fired her on October 10, 2017, after she filed her 2017 Charge of Discrimination with the EEOC on September 29, 2017. Dkt. No. 35 at 5; Dkt. No. 71 at 4-5.[5] She filed the 2017 Charge "based on the suspension and other acts of discrimination." *Id.* FedEx allegedly fired her because it had reprimanded her three times within the five-year period leading up to her termination, despite its policy to only terminate employees "if there are three (3) reprimands within a one-year period." *Id.*[6]

Under Title VII, an employer may not discriminate against an employee based upon their race or sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff can demonstrate an employer's unlawful discrimination through direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001) (citations omitted); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Direct evidence is defined as evidence which, if believed, proves the fact of discrimination "without inference or presumption." *Portis v. National Bank of New Albany, Mississippi*, 34 F.3d 325, 328–29 (5th Cir. 1994). Direct evidence includes any statement or written document

---

[5] Herron asserts that FedEx fired her after she filed her 2017 Charge of Discrimination with the EEOC. Dkt. No. 35 at 5; Dkt. No. 71 at 4-5. However, the record shows that FedEx fired her on October 10, 2017, and she did not file her 2017 Charge with the EEOC until October 18, 2017. Dkt. No. 72 at 121; Dkt. No. 53-1 at 86.

[6] Herron also generally accuses FedEx of "discriminatory conduct" without identifying the conduct. *See* Dkt. No. 71 at 2, 5. In support of her allegations, she repeatedly cites to the same 72 pages of her deposition. *Id.* at 2, 5, 6. As discussed below, however, Herron's citations and allegations fail to create a material question of fact allowing her to survive summary judgment.

containing a facially apparent discriminatory motive.  *Id.* at 329; *Ihegword v. Harris County Hosp. Dist.*, 929 F. Supp. 2d 635, 645 (S.D. Tex. 2013).

When direct evidence is absent, the Fifth Circuit requires that courts analyze a plaintiff's Title VII discrimination claims pursuant to a "modified," rather than traditional, *McDonnell Douglas* burden-shifting framework.  *See Paske v. Fitzgerald*, 785 F.3d 977, 984–85 (5th Cir. 2015) (applying the "modified *McDonnell Douglas*" burden-shifting framework); *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 268 (5th Cir. 2015) (same); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (same); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (same); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007) (same); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (same).  *See also Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 382 (5th Cir. 2012) ("The district court appears to have applied the *McDonnell Douglas* framework in ruling on Hammond's Title VII racial discrimination claim.  However, 'we apply the modified *McDonnell Douglas* framework in racial discrimination cases under Title VII.'") (citations omitted, unpublished); *Flowers v. Texas Mil. Dep't*, 391 F. Supp. 3d 655, 663 (S.D. Tex. 2018) (noting that the Fifth Circuit applies the "modified *McDonnell Douglas* burden-shifting framework" to Title VII discrimination claims ) (citations omitted).[7]

---

[7]  The traditional *McDonnell Douglas* burden-shifting framework was first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).  The modified *McDonnell Douglas* burden-shifting framework applicable to Title VII discrimination claims differs from the traditional *McDonnell Douglas* burden-shifting framework applicable to Title VII retaliation claims.  *See Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 382 (distinguishing the two frameworks in the Title VII context and noting that the frameworks only differ "in the third stage of the analysis, after the plaintiff establishes a prima facie case of discrimination, and the defendant offers a legitimate, nondiscriminatory reason for its adverse employment action."); *Flowers v. Texas Mil. Dep't*, 391 F. Supp. 3d 655, 667 (same).  As the traditional framework applies to Herron's retaliation claims, the Court will discuss the difference between the two

Under the modified *McDonnell Douglas* burden-shifting framework, the plaintiff must first make a prima facie showing that: (1) she is a member of a protected group, (2) she was qualified for the position at issue, (3) she suffered an adverse employment action, and (4) she was treated less favorably than other similarly situated employees outside of her protected group. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 823 (5th Cir. 2019) (citations omitted); *Faucette v. Wolf*, No. CV H-20-942, 2021 WL 848693, at *4 (S.D. Tex. Mar. 5, 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03; *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005)). The United States Supreme Court has stated that this is not an "onerous burden." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

Despite the Supreme Court's pronouncement, a plaintiff cannot satisfy the fourth element of her prima facie case in the Fifth Circuit unless she shows that "her employer treated similarly situated employees more favorably in 'nearly identical circumstances.'" *Faucette v. Wolf*, No. CV H-20-942, 2021 WL 848693, at *4 (citations omitted); *see also Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (same); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (same); *Smith v. Wal-Mart Stores,* (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990) (same); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982) (same); *Peterson v. Linear Controls, Inc.*, 757 F. App'x 370, 373 (5th Cir. 2019) ("*McDonnell Douglas* requires a plaintiff to demonstrate that . . . (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of

---

frameworks in section IV(B)(3) of this Report while analyzing those claims. *See Infra* at pgs. 27-28.

the protected class, under nearly identical circumstances.") (citing *Paske v. Fitzgerald*, 785 F.3d 977, 985) (unpublished).[8]

Furthermore, with respect to the third element, only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" qualify as adverse employment actions. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007)). Actions which do not affect "job duties, compensation, or benefits" will not constitute adverse employment action. *Id.* (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). If an action only causes a minimal change or loss of job duties, it will also typically fail to qualify as an adverse employment action. *Id.* (citing *Thompson v. City of Waco, Tx.*, 764 F.3d 500, 504 (5th Cir. 2014); *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 269–70 (5th Cir. 2005)).

Once the plaintiff makes her prima facie showing, the burden shifts to the defendant to explain how the subject adverse employment action was nondiscriminatory. *McDonnell Douglas Corp.*, 411 U.S. at 802. The defendant's burden here "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, (1993)); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (same). To meet this burden, the defendant "must clearly set forth, through the introduction of admissible evidence," the non-discriminatory reason for the adverse

---

[8]   Some commentators have suggested that requiring similarly-situated, nearly-identical-circumstance comparator evidence at the summary judgment stage is, in fact, a very onerous burden. *See generally* Tricia M. Beckles, *Class of One: Are Employment Discrimination Plaintiffs at an Insurmountable Disadvantage If They Have No "Similarly Situated" Comparators?,* 10 U. Pa. J. Bus. & Emp. L. 459, 477–78 (2008).

employment action. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256). The defendant's reason for the adverse action may even be based upon incorrect facts, so long as it is not based upon discriminatory animus. *Id.* (citations omitted).

If the defendant meets this burden of production, then the burden shifts back to the plaintiff. At this stage, the plaintiff must point to admissible evidence raising a factual dispute regarding whether: (1) the defendant's reasons are a pretext for discrimination; or, (2) the defendant has mixed motives for the adverse employment action. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312).

> A Title VII plaintiff can demonstrate pretext in two ways. First, the plaintiff can show that the employer's "proffered explanation is false or 'unworthy of credence.'" *Vaughn*, 665 F.3d at 637 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). An employer's explanation is false or unworthy of credence when the "explanation, accurate or not, is [not] 'the real reason' for firing" the employee. *Id.* (quoting *Laxton*, 333 F.3d at 579). Hence, an employer "is allowed to be incorrect in its assessment of the facts it relies on to justify firing [the plaintiff], but it is not allowed to have any discriminatory animus . . . in making its decision." *Id.* at 636 (citing *Laxton*, 333 F.3d at 579; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). Second, pretext can be shown via disparate treatment, that is, by proof that "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citing *Wallace* [*v. Methodist Hosp. Sys.*, 271 F.3d 212,] 221-22 [(5th Cir. 2001)]; *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985)).

> To survive summary judgment through the mixed-motive alternative, a plaintiff "must offer sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (citing *Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 310 (5th Cit. 2004), *abrogated in part [in the ADEA context] by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

*Traylor v. S. Components, Inc.*, No. 18-CV-0775, 2019 WL 3526358, at *5 (W.D. La. Aug. 1, 2019)(footnote omitted).

Herron has not presented the Court with direct admissible evidence that FedEx discriminated against her based upon her race or sex.  That is, none of the admissible evidence she has presented proves the fact of FedEx's discrimination "without inference or presumption."  *See Portis v. National Bank of New Albany, Mississippi*, 34 F.3d 325, 328–29; *Exhibits A, B, and C to* Dkt. No. 71, docketed as Dkt. Nos. 71-1, 72, 73, and 74.[9] The Court must, therefore, analyze her claim under the modified *McDonnell Douglas* burden-shifting framework.   *See Jackson v. Watkins*, 619 F.3d 463, 466 (citing *McDonnell Douglas Corp*, 411 U.S. 792; *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12; *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312)*; Flowers v. Texas Mil. Dep't,* 391 F. Supp. 3d 655, 66.  Pursuant to this framework, Herron must make a prima facie showing that: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) she was treated less favorably than other similarly situated employees outside of her protected group.  *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 823; *Faucette v. Wolf*, No. CV H-20-942, 2021 WL 848693, at *4.

As an African American female, Herron has demonstrated that she is a member of two protected groups.  She has also shown, and FedEx has not denied, that she was

---

[9]    In her Response, Herron initially asserts that she has presented direct evidence of discrimination.  Dkt. No. 71 at 2.  However, Herron never specifically identifies the direct evidence and the remainder of her Response purports to rely upon circumstantial evidence.  *See id.* at 9 ("This is a pretext case.  Plaintiff provides this Court with circumstantial evidence to support her claims."), and 16 ("The plaintiff in the *West* case *as in this case* produced no direct evidence of discrimination.") (emphasis added).

qualified for the positions she held at FedEx.  At a minimum, her termination also qualifies as an adverse employment action.  *See Welsh*, 941 F.3d 818, 824 (noting that only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" qualify as adverse employment actions") (internal citations and quotations omitted).[10]  To satisfy her initial prima facie burden, then, she must only show that a material question of fact exists with respect to whether she was treated less favorably than other similarly situated employees outside of her protected groups.

To create a genuine issue of material fact here, Herron must present some evidence that FedEx "treated similarly situated employees more favorably in 'nearly identical circumstances.'"  *Faucette*, No. CV H-20-942, 2021 WL 848693, at *4 (citations omitted); *see also Paske v. Fitzgerald,* 785 F.3d 977, 985 (same); *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (same); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (same); *Smith v. Wal-Mart Stores,* (No. 471), 891 F.2d 1177, 1180 (same); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (same); *Peterson v. Linear Controls*, Inc., 757 F. App'x 370, 373 (same) (unpublished).  Herron attempts to meet this burden indirectly by stating that *all* of her legal claims survive summary judgment and by referring *generally* to all of her evidentiary submissions.  Dkt. No. 71 at 2, 13, 22.  Her evidentiary submissions include her deposition testimony, the exhibits attached to her deposition, and her 2016 Charge.  Dkt. No. 71 at 13 (referencing Dkt. No. 71, Exhibits A-C).  She also states that content

---

[10]  The Court need not determine if FedEx's other alleged employment actions qualify as "adverse" because Herron has failed to create a material question of fact with respect to the fourth element of her prima facie case.  As discussed next, Herron has not produced evidence that FedEx treated her less favorably than other similarly situated employees outside of her protected group.

within 72 specific pages of her deposition support all of her legal claims, including her discrimination claims.[11]

Herron has not met her burden.  With respect to FedEx's conduct occurring after April 30, 2016, Herron's Complaint, Response, and cited evidence have identified: (1) some employees who were outside of her protected groups; (2) some employees who were treated more favorably than her in certain circumstances; (3) some employees who may have been similarly situated; and, (4) some employees who may have been in similar or identical circumstances. *See* Dtk. No. 35 at 5; Dkt. No. 71 at 2, 4-6, 17. *See also* Exhibit A of Dkt. No. 71 at 20:1-8, 14-24; 21:1-5; 54:16-23; 55:11-15; 56:2-7; 57:5-19; 58:16-23; 93:19-25; 94:1-8; 101:3-15; 105:10-12; 106:3-9; 109:7-20, 23-25; 110:1; 119:8-13; 120:20-25; 121:1-16; 122:13-25; 123:1-9, 17-20; 126:7-9, 12-15, 21-25; 127:1-9, 12-25; 128:17-22; 129:10-23; 130:12-19; 131:18-25; 132:2-5; 137:3-10; 140:6-13; 156:4-13; 157:3-6, 20-21, 25; 158:1-6, 15-17; 159:1; 169:17-21; 170:3-5, 23-25; 171:1; 173:6-15; 174:3-5; 181:23-25; 182:1-10; 183:8-20; 184:7-10; 185:8-12; 186:1-24; 187:11-15; 269:20-25; 270:1, 15-23; 271:10-25; 272:1-7; 273:1-12, 18-21; 274:2-4, 14-24; 275:2-14; 278:22-25; 279:1-10, 15-23; 280:2-25; 281:1-9, 18-25; 282:1-25; 283:1-25; 284-1-25; 285:1-17; 286:1-23; 287:1-16: 288:9-14, 22-25; 289:1-25; 290:1-25; 291:1, 10-20; 292:1-25; 293:1; 296:7-21; 298:5-16; 302:1-15; 303:12-25; 304:1-2.  For each alleged act of discrimination, however, her Complaint, Response, and cited evidence do not identify any employee or group of employees who were all of these things at once.  *See id*.  In other words, for each alleged act of discrimination, Herron has not identified a single employee who was: (1) outside of either of her protected groups; (2) similarly situated to her; and, (3) treated more

---

[11] The Court will summarize the content relied upon by Herron in these 72 pages when analyzing her retaliation claims.  For reasons that will become clear below, the Court need not summarize that content here.

favorably than her, in nearly identical circumstances.  Relatedly, for each alleged claim of discrimination, Herron has also failed to produce admissible evidence that FedEx treated any similarly situated employee, outside of either of her protected groups, more favorably in nearly identical situations.  *See id*.

"A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotations and citations omitted). Instead, they must identify "specific evidence in the record" and "articulate the precise manner in which that evidence supports his or her claim."  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id*. (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)); *Keller v. Fleming*, 952 F.3d 216, 224 (5th Cir. 2020) (same); *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017), *as revised* (July 14, 2017) (same); *Clayton v. U.S. Xpress, Inc.*, No. 3:19-CV-03006-L, 2021 WL 1894691, at *2 (N.D. Tex. May 11, 2021) (same).  Arguments that are not timely briefed are considered waived and abandoned. *See Cupit v. Whitley*, 28 F.3d 532, 535 n. 5 (5th Cir. 1994) (collecting cases and noting the general rule that issues, evidence, and arguments raised for the first time in objections to a magistrate judge's report are not deemed properly before the district court); *Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F. Supp. 3d 858, 859 (E.D. Tex. 2019) (noting that an argument not timely or adequately briefed before the United States Magistrate Judge was abandoned) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) and *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525–26 (5th Cir. 2005)).  As

FedEx correctly notes (*see* Dkt. No. 75 at 5), Herron has not presented a material question of fact with respect to each element of her prima facie case.  Consequently, she has not met her burden to show unlawful discrimination and FedEx is entitled to summary judgment.

**(3) Herron's Retaliation Claims**.  As noted above, Herron's Complaint and Response largely fail to distinguish FedEx's alleged retaliatory acts from its alleged discriminatory acts.  Her Complaint and Response also accuse FedEx of retaliatory conduct without specifying when the conduct occurred.  *See generally* Dkt. Nos. 35 and Dkt. No. 71.  During her time at the company, she alleges that FedEx improperly: (1) orally reprimanded her; (2) disciplined her in writing; (3) failed to investigate her complaints; (4) ripped up one of her complaints; (5) dissuaded her from reporting harassment and offensive conduct; (6) failed to stop or punish the perpetrators of the harassment and offensive conduct; (7) investigated her and suspended her without pay during the investigations; (8) failed to assist her in her attempts to obtain promotion; (9) failed to promote her; and, (10) terminated her, even though its policies did not require termination.  *Id*.  With respect to conduct that Herron specifically identifies as occurring after April 30, 2016, Herron states that:

1. FedEx suspended her without pay on or about on May 16, 2017, after she filed a complaint against a Hispanic female coworker, Belinda Garza, for workplace violence.  FedEx did not discipline Garza.  Dkt. No. 35 at 5.

2. FedEx suspended her on or about September 28, 2017, while it investigated a complaint that she filed.  Her complaint concerned a dispute that occurred that same day between herself and a Hispanic male coworker.  This dispute arose when the coworker insisted that she provide him with keys to a vehicle that he was unauthorized to operate and she refused.  Dkt. No. 35 at 5; Dkt. No. 71 at 4.  FedEx investigated this coworker's complaint that she had called him "panson," which means "fat stomach" in Spanish.  *Id*.  But, it did not investigate her complaint that he called her "Sonia la Ronia," which is a Spanish reference to "dog mange."  *Id*.

3. During this investigation, FedEx also failed to investigate her claims that coworkers had called her other names due to her race, such as "'Felicia' ([i]n reference to a Black female character in the movie 'Friday') or 'Madea' (the Black female character portrayed by Tyler Perry in his movies)[.]" Dkt. No. 35 at 5; Dkt. No. 71 at 4.

4. FedEx fired her on October 10, 2017, after she filed her 2017 Charge of Discrimination with the EEOC on September 29, 2017. Dkt. No. 35 at 5; Dkt. No. 71 at 4-5.[12] She filed the 2017 Charge "based on the suspension and other acts of discrimination." *Id.* FedEx allegedly fired her because it had reprimanded her three times within the five-year period leading up to her termination, despite its policy to only terminate employees "if there are three (3) reprimands within a one-year period." *Id.*

Title VII makes it unlawful for an employer to discriminate against any employee because the employee "has opposed any practice made [ ] unlawful . . . by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Where direct evidence is lacking, the Fifth Circuit analyzes Title VII retaliation claims under the traditional, rather than modified, *McDonnell Douglas* burden-shifting framework. *Flowers v. Texas Mil. Dep't*, 391 F. Supp. 3d 655, 667 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362-63 (2013)).

Under this framework, a plaintiff must first show that: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)). An employee has engaged in protected activity if she has "'(1) opposed any practice made an unlawful employment practice by [42 U.S.C.

---

[12] Again, as noted above, the record shows that FedEx fired her on October 10, 2017, and she did not file her 2017 Charge with the EEOC until October 18, 2017. Dkt. No. 72 at 121; Dkt. No. 53-1 at 86.

§ 2000e-2],' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [§ 2000e-2].'" *Flowers*, 391 F. Supp. 3d 655, 668 (*quoting Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000)). *See also Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 619 (5th Cir. 2020) ("We have interpreted Title VII's opposition clause to mean that a plaintiff engages in protected activity when she complains of an employment practice that she 'reasonably believes' violated Title VII.") (citing *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016)).   In the retaliation context, an "'[a]dverse employment action" is a materially adverse action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Once the plaintiff makes this prima facie showing, the burden shifts to the defendant to articulate "a legitimate, non-retaliatory reason for the employment action." *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021) (citing *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014)).   "The defendant may meet this burden by presenting evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Pierce v. Patient Support Servs., Inc.*, No. 5:18CV138-RWS-CMC, 2020 WL 2485920, at *4 (E.D. Tex. Feb. 3, 2020), *report and recommendation adopted*, No. 5:18-CV-138-RWS-CMC, 2020 WL 1482341 (E.D. Tex. Mar. 27, 2020) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08) (internal quotations omitted).   "This burden is one of production, not proof, as the ultimate burden of persuasion always remains with the employee." *Horvath v. City of Leander*, 946 F.3d 787, 793 (5th Cir. 2020), *as revised* (Jan. 13, 2020) (citing *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 (5th Cir.

2016)); *McDonald N. v. Gen. Plastics & Composites, L.P.*, No. 4:17-CV-02610, 2019 WL 3549895, at *6 (S.D. Tex. Aug. 2, 2019) (same).

If the defendant meets this burden, the burden shifts back to the plaintiff to show that the articulated reason for the employment action was a pretext for retaliation. *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 619 (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 607). To demonstrate pretext, the plaintiff must provide evidence showing "that the adverse action would not have occurred but for [her] employer's retaliatory motive." *Id.* (citing *Feist v. La., Dep't of Justice Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)). Because the traditional *McDonnell Douglas* burden-shifting framework applies, the plaintiff may not meet her burden here with mixed-motive evidence. That is, she may not meet her burden by showing that a retaliatory motive was one of the employer's motives for the adverse employment action. *Flowers*, 391 F. Supp. 3d 655, 667, n. 19.

> Unlike Title VII discrimination claims, the traditional, not modified, *McDonnell Douglas* analysis applies to Title VII retaliation claims. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362-63, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013). A plaintiff cannot show causation or pretext in a retaliation claim by relying on the mixed-motive analysis. *Id.* Rather, protected activity must be a but for cause of the retaliatory conduct, which is a higher standard than the motivating factor analysis. *Id.*

*Id.* *See also Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, at 382 ("[U]nder the modified framework," the plaintiff "is required to show *either* that the defendant's reason was pretextual, *or* that the reason, while true, was only one of the reasons for its adverse action[.]" Under the "traditional framework," the plaintiff "*must* show that the

defendant's reason was a pretext[.]") (citations omitted, emphasis added); *Pace v. Livingston Par. Sch. Bd.*, 578 F. App'x 369, 372–73 (5th Cir. 2014) (same).[13]

It is important to note here that the "but-for" causation requirement "does not apply at the prima facie case stage." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citing *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019)). "[A]t the prima facie case [stage]," a plaintiff can meet her burden of causation "simply by showing close enough timing between h[er] protected activity and h[er] adverse employment action." *Id.* (quoting *Garcia*, 938 F.3d 236, at 243). At the pretext case stage, however, "temporal proximity" between the plaintiff's protected activity and the defendant's alleged adverse employment action, by itself, is insufficient to demonstrate pretext. *Id.* at 579 (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). At the pretext case stage, a plaintiff may survive summary judgment "'by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or

---

[13]   When referring to the burden-shifting frameworks applicable to Title VII claims, the Fifth Circuit is frequently inconsistent. For example, many Fifth Circuit opinions refer to the burden-shifting framework applicable to Title VII discrimination claims as the "modified *McDonnell Douglas* burden-shifting framework," but other opinions simply refer to it as the "*McDonnell Douglas* burden-shifting framework," without using the word "modified." *Compare Paske v. Fitzgerald*, 785 F.3d 977, 984–85 (5th Cir. 2015) (referring to the "modified *McDonnell Douglas*" burden-shifting framework); *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 268 (5th Cir. 2015) (same); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (same), *with Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (omitting the word modified when referring to the same *McDonnell Douglas* burden-shifting framework); *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346 (5th Cir. 2013) (same). Likewise, when analyzing Title VII retaliation claims, the Fifth Circuit has also referred to the applicable framework inconsistently. *Compare Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (correctly noting that retaliation claims under Title VII "are analyzed under the *McDonnell Douglas* burden-shifting framework."), *with Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 343 (5th Cir. 2012) (stating that retaliation claims under Title VII "are analyzed under the "modified *McDonnell Douglas* approach") (citations and footnote omitted, unpublished). Because the frameworks are different, this inconsistency complicates an already convoluted area of the law.

that her employer's explanation is unworthy of credence.'" *Id*. at 577 (citing *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll*., 719 F.3d 356, 363 (5th Cir. 2013)).

> Ultimately, in order to survive a motion for summary judgment, a plaintiff must show "a 'conflict in substantial evidence'" on the question of whether the employer would not have taken the adverse employment action but for the protected activity. *Musser v. Paul Quinn Coll*., 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id*. at 561–62 (internal quotation marks and citation omitted).

> Under the cat's paw theory of liability, a plaintiff can establish but-for causation even if the decisionmaker directly responsible for the adverse employment action did not act out of retaliatory animus. *See Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015). A plaintiff proceeding under this theory must prove that (1) her supervisor, motivated by retaliatory animus, took action intended to cause an adverse employment action; and (2) that action was the but-for cause of her adverse employment action. *Id*. at 333.

> . . . . In deciding whether summary judgment is warranted, the court should consider "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price* [ *v. Fed. Express Corp*., 283 F.3d 715,] 720 [(5th Cir. 2002)] (internal quotation marks and citation omitted).

*Id*. at 577-78.

As she acknowledges, Herron has presented the Court with no direct admissible evidence of retaliation. Dkt. No. 71 at 16 ("Plaintiff acknowledges that her retaliation claim is based on circumstantial evidence."). To survive summary judgment, then, she must first provide some circumstantial evidence showing that: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co*., 990 F.3d 428, 433 (citing *Long v. Eastfield College*, 88 F.3d 300, 304). Herron claims that she has satisfied each element of her prima facie burden and

relies generally upon her deposition testimony, the exhibits attached to her deposition, her 2016 Charge, and the "discrepancies" contained in Defendant's evidence.  Dkt. No. 71 at 2, 13.  She also relies upon content within 72 specific pages of her deposition.  *See* Exhibit A of Dkt. No. 71 at 20:1-8, 14-24; 21:1-5; 54:16-23; 55:11-15; 56:2-7; 57:5-19; 58:16-23; 93:19-25; 94:1-8; 101:3-15; 105:10-12; 106:3-9; 109:7-20, 23-25; 110:1; 119:8-13; 120:20-25; 121:1-16; 122:13-25; 123:1-9, 17-20; 126:7-9, 12-15, 21-25; 127:1-9, 12-25; 128:17-22; 129:10-23; 130:12-19; 131:18-25; 132:2-5; 137:3-10; 140:6-13; 156:4-13; 157:3-6, 20-21, 25; 158:1-6, 15-17; 159:1; 169:17-21; 170:3-5, 23-25; 171:1; 173:6-15; 174:3-5; 181:23-25; 182:1-10; 183:8-20; 184:7-10; 185:8-12; 186:1-24; 187:11-15; 269:20-25; 270:1, 15-23; 271:10-25; 272:1-7; 273:1-12, 18-21; 274:2-4, 14-24; 275:2-14; 278:22-25; 279:1-10, 15-23; 280:2-25; 281:1-9, 18-25; 282:1-25; 283:1-25; 284:1-25; 285:1-17; 286:1-23; 287:1-16: 288:9-14, 22-25; 289:1-25; 290:1-25; 291:1, 10-20; 292:1-25; 293:1; 296:7-21; 298:5-16; 302:1-15; 303:12-25; 304:1-2.

FedEx argues that Herron has not satisfied the first and third elements of her prima facie burden.  Dkt. No. 53 at 15-18; Dkt. No. 75 at 4.  More specifically, FedEx asserts as follows:

> FedEx [has] addressed incidents Plaintiff might claim as "protected activity" and explained why each did not qualify as such (*see* Dkt. No. 53 at 16-18); Plaintiff does not rebut this analysis.  Instead, Plaintiff concludes she engaged in protected activity without citing any supporting evidence. (*See, e.g.*, Dkt. No. 71 at 9-10).  The closest Plaintiff comes to identifying any "protected activity" is stating "[t]here is no doubt that Plaintiff Sonia Herron participated in several investigations with Federal Express Corporation," and discussing the retaliation provision of the Texas Commission on Human Rights Act ("TCHRA"), a statute not at issue.  (*See id.* at 16-17; 18-20).  There is no further explanation about what "investigations" means or identification of any particular investigation Plaintiff asserts is protected.  With no articulation of a "protected activity," Plaintiff has not met this element of her prima facie retaliation case.

> Given that Plaintiff identifies no specific "protected activity," it's not surprising that she also articulates no causal connection between any

> activity and an adverse employment action. As FedEx explained (and
> Plaintiff does not rebut), many activities Plaintiff complained about
> occurred years before any discipline or termination, with different players
> and decision-makers having no discernible link to an adverse action. (*See*
> Dkt. No. 53 at 18-19).  Plaintiff does not challenge FedEx's argument and
> provides no analysis to satisfy this prong.

Dkt. No. 75 at 4.

FedEx's assessment of Herron's prima facie case is mostly correct.  Herron's Response to its Motion for Summary Judgment focuses almost entirely upon reciting legal standards applicable to retaliation claims.  *See* Dkt. No. 71 at 18-20.  It discusses those standards generally without tying them, or applying them, to the facts of Herron's particular case.  *Id*.  In fact, at one point, Herron's Response refers to "Defendant bank" and appears to be discussing a case unrelated to this civil action.  *Id*. at 22 ("The summary judgment evidence in this case provides ample reason for the jury to suspect and scrutinize the actions of the *Defendant bank*.  The summary judgment evidence in this case further allows the jury to determine whether the *Defendant bank* has engaged in mendacity . . .") (emphasis added).  Thus, with respect to FedEx's alleged acts of retaliation which are not time-barred, Herron's Response and Complaint mostly fail to identify: (1) a specific adverse employment action, that is (2) causally linked to her participation in a specific investigation, that is (3) related in any way to protected activity.  *See generally* Dkt. Nos. 35 and 71.[14]

Still, FedEx's assessment of Herron's prima facie case omits a few critical facts.  Herron has shown that: (1) she filed an internal EEO complaint alleging discrimination based on race and sex on October 9, 2017; and (2) FedEx fired her the very next day on

---

[14] As detailed above, most of FedEx's alleged acts of discrimination and retaliation occurred prior to April 30, 2016.  Therefore, most of her retaliation claims are time-barred.  *See Supra* at pgs. 6-7.

October 10, 2017. *See* Dkt. No. 53-6 at 33-34; Dkt. No. 71-1 at 120-122; Dkt. No. 72 at 110-115. Therefore, Herron has shown that: (1) she engaged in protected activity; and, (2) she suffered an adverse employment action. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (noting that an employee has engaged in protected activity if she has "(1) opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." ); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (noting that, in the retaliation context, an "'[a]dverse employment action" is a materially adverse action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citations omitted).

Herron has also shown that a causal connection exists between her protected activity and an adverse employment action because her termination occurred one day after she filed the internal EEO complaint. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577, 578 (finding a seven-week gap between the protected activity and the plaintiff's termination sufficient to demonstrate causation at the "prima facie case stage" because, at that stage, a plaintiff can establish causation "'simply by showing close enough timing between h[er] protected activity and h[er] adverse employment action.'") (quoting *Garcia*, 938 F.3d 236, at 243). With respect to her termination, then, Herron has established a prima facie case of retaliation. *See id.*

Because Herron has established a prima facie case of retaliation, FedEx must articulate "a legitimate, non-retaliatory reason" for Herron's termination. *See Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (citing *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171). As this is a burden of production, not persuasion, FedEx may meet this burden by presenting evidence that, "if believed by the trier of fact, would support a

finding that unlawful discrimination was not the cause of the employment action." *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (quoting *Hicks*, 509 U.S. 502, 506–08) (internal quotations omitted). *See also Reeves*, 530 U.S. 133, 142 (noting that this burden "is one of production, not persuasion; it 'can involve no credibility assessment.'") (quoting *Hicks*, 509 U.S. 502, 509).

FedEx has produced a copy of the letter it gave to Herron terminating her employment. This letter states that it terminated her due to her "continued disruptive behavior[.]" Dkt. No. 53-6 at 33.

> On September 28, 2017, while working in the Gatekeeper Office at the HRLA station, you made a derogatory comment to a peer. Upon completion of our investigation, it was determined that your conduct was in violation of the Acceptable Conduct Policy (P2-5), a copy of which is attached for your review. As a result of your continued disruptive behavior, your employment is being terminated effective October 10, 2017.

*Id.* The "Acceptable Conduct Policy (P2-5)" cited in this letter provides that "[d]isruptive conduct while on duty or on Company property" is prohibited and may lead to termination. Dkt. No. 53-6 at 22. This Policy also states that an employee's "entire employment history is reviewed and taken into consideration when evaluating patterns of misconduct." *Id.* at 24.

FedEx cites specific examples in several documents to support its claim that Herron's behavior was disruptive on a continued basis. *See* Dtk. No. 75 at 8-9 (citing specific pages within Dkt. Nos. 53-1, 53-2, 53-5, 53-6, 53-7). These pages contain evidence that:

1. Manager Patricia A. Garza counseled Herron to review FedEx's Acceptable Conduct Policy because of a complaint made against Herron on June 28, 2011, regarding her behavior at the gatekeeper counter. Dkt. No. 53-1 at 24.

2. Manager Todd Bradford issued a warning letter to Herron on December 24, 2012. This letter stated that she had violated the Acceptable

Conduct Policy by falsifying records. This letter also stated that Herron violated the Acceptable Conduct Policy by communicating with FedEx employees while she was suspended, with pay, during an investigation into her conduct. Dkt. No. 53-2 at 14, 93-94.

3. Manager Ruth Quinones issued a warning letter to Herron on April 11, 2016, stating that Herron had violated the Acceptable Conduct Policy by disclosing confidential information to other employees regarding an investigation, despite being instructed not to discuss any aspect of the investigation. Dkt. No. 53-5 at 1-2; Dkt. No. 53-2 at 58-59; Dkt. No. 53-6 at 18-19.

4. Manager Patricia A. Garza issued a written counseling to Herron on October 14, 2011, stating that she had engaged in disruptive conduct while on the phone with a coworker. Dkt. No. 53-2 at 90.[15]

5. Manager Raymond Hand counseled Herron not to use her personal cell phone at work on July 27, 2016. Dkt. No. 53-1 at 21.

6. Herron admitted to taking screen shots of a coworker's personal text messages without his permission in order to report a manager for providing beer to a FedEx employee outside of work. Dkt. No. 53-2 at 20-22; Dkt. No. 53-1 at 68.

7. One of Herron's coworkers, Oliver Price, filed an internal EEO complaint on August 1, 2016, complaining that Herron and Manager Mary Ann Marshall were creating a hostile work environment by discussing confidential information and otherwise conducting themselves unprofessionally. Dkt. No. 53-1 at 74-79.

8. Herron repeatedly interrupted a FedEx security employee's work to request that he pull video footage so that she could document petty complaints against other employees. Dkt. No. 53-7.

9. Herron violated company policy by using her access to employee timecards to make copies of certain timecards for her own personal use. Dkt. No. 53-2 at 42-57; Dkt. No. 53-6 at 3.

---

[15] This written counseling is addressed to, and signed by, Sonia Vasquez. Dkt. No. 53-2 at 90. During her deposition, Sonia Herron confirmed that her previous married name was Sonia Vasquez. *Id.* at 11. At one point, the written counseling also refers to Herron as "Gina." *Id.* at 90. The record indicates that Herron engaged in disruptive conduct with her coworker Gina Graham, and that Graham also likely received a written counseling. *See id.* at 9, 11, 90.

10. On September 27, 2017, Herron called a coworker derogatory names. Specifically, she called the coworker "'Panson' which means (FAT ASS) and 'Gordo' which means (FATSO)." Dkt. No. 53-1 at 83.[16]

This evidence satisfies FedEx's burden of production because, if believed by the trier of fact, it would support a finding that Herron was terminated for her disruptive conduct, rather than for a discriminatory reason. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (noting that a defendant may meet its burden by presenting evidence that, if believed by the factfinder, would support a finding that the adverse employment action was caused by something other than unlawful discrimination) (citations omitted). *See also Reeves*, 530 U.S. 133, 142 (noting that the defendant's burden at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'") (quoting *Hicks*, 509 U.S. 502, 509).

Because FedEx has met its burden of production, Herron must produce some evidence showing that FedEx's articulated reason for terminating her was a pretext for retaliation. *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 619. That is, she must produce some evidence showing that her termination on October 10, 2017, "would not have occurred but for" FedEx's motive to retaliate against her for filing the internal EEO complaint on October 9, 2017. *See id.* (citing *Feist v. La., Dep't of Justice Office of the Att'y Gen.*, 730 F.3d 450, 454). At the pretext stage, Herron may not survive summary judgment with evidence of temporal proximity alone. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578–79 ("The temporal proximity between Brown's protected activity and her termination is relevant to, but not alone sufficient to demonstrate, pretext. *See*

---

[16] FedEx cites this evidence in its Reply, but some of its record citations are incorrect. *See* Dtk. No. 75 at 8-9. The Court has provided corrected citations here but has not scoured the record to find every piece of evidence that FedEx failed to cite accurately.

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).").   The evidence Herron relies upon must be sufficient to show a "conflict in substantial evidence" on the question of whether FedEx would have fired her, but for her filing of the internal EEO complaint.   *See id.* at 577 (citations omitted).   To be considered substantial, the evidence she presents must be of such a weight and quality that reasonable and fair-minded persons "in the exercise of impartial judgment" might reach differing conclusions.   *Id.* (citations and quotations omitted).

Herron may make this showing by providing evidence of disparate treatment of similarly situated employees, or by providing evidence that FedEx's proffered reason for her termination is unworthy of credence.   *See Brown.*, 969 F.3d 571, 577, 581 (citing *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363).   In deciding whether summary judgment is warranted, this Court should consider "numerous factors," including the strength of Herron's prima facie case, the probative value of her proof that FedEx's explanation is false, and "any other evidence" that supports FedEx's case "and that properly may be considered."   *Id.* at 578 (citations omitted).

In response to FedEx's argument that she has no evidence of pretext, Herron again relies generally upon her deposition testimony, the exhibits attached to her deposition, her 2016 Charge, and the "discrepancies" contained in Defendant's evidence.   *See* Dkt. No. 71 at 2, 13.   She also relies upon content within the same 72 pages of her deposition cited above.   *See Supra* at p. 22.   Herron does not, however, describe the content of these pages, explain how the content demonstrates pretext, or point to any specific discrepancies within FedEx's evidence.   For this reason alone, Herron has not met her burden.   *See Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (noting that, to

overcome summary judgment, a plaintiff must identify "specific evidence in the record" and "articulate the precise manner in which that evidence supports [] her claim.") (citations omitted); *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 ("A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.") (internal quotations omitted); *Cupit v. Whitley*, 28 F.3d 532, 535 n. 5 (collecting cases and noting the general rule that issues, evidence, and arguments raised for the first time in objections to a magistrate judge's report are not deemed properly before the district court); *Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F. Supp. 3d 858, 859 (noting that an argument not timely or adequately briefed before the United States Magistrate Judge was abandoned) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 and *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525–26).

In the interests of justice, however, the Court has reviewed the evidence contained in the 72 pages that Herron cites to, but does not discuss. Or, more accurately, the Court has considered the entire record, along with, not only the lines relied upon by Herron on these 72 pages, but the pages themselves. Herron's relevant, and sometimes irrelevant, testimony in these pages is as follows:

1. In a lawsuit against a prior employer, she did not allege race or gender discrimination. While working for FedEx, she kept notes documenting the things that happened to her. She made the notes on a weekly basis because things were happening to her at work. She did not write everything down because she was frequently too busy. She threw some of the notes away. Dkt. No. 71-1 at 20-21.

2. In 2008 or thereabouts, she received warning letters concerning accidents she had been involved in as a FedEx driver. It was her understanding that additional warnings might have led to termination, had she remained a driver. *Id.* at 54-58.

3. FedEx employee and/or manager Tommy Rios wrote her a letter confirming her interview date for a position that she had applied for so

that she could move up within the company.  The date in the letter was wrong.  A coworker told her the correct interview date was July 11, 2017.  She was not sure if the incorrect date in the letter was due to a clerical error, or if FedEx gave her the wrong date on purpose.  *Id*. at 93-94.

4.  Three or four FedEx employees warned her to be careful and told her that Jonny Torres was spying on her and reporting back to manager Raymond Hand.  *Id*. at 101.

5.  She would only call Rolando Montemayor "panson" after he called her "Sonia la Ronia."  Calling each other these names was "common banter" between them.  She did not like being called dog mange, but she thought he liked being called panson.  She never told others he was fat and sweaty.  But, she did tell them that he would pull up his shirt in front of the fan, and the odor from his belly would smell up the whole room.  *Id*. at 105-106.

6.  She did not think that Montemayor was sick of her calling him panson because he always initiated the name calling and never asked her to stop.  At least four FedEx employees witnessed Montemayor initiate the name calling, when it occurred.  The dispute between them on September 28, 2017 started when she would not give him keys to a vehicle because he was not a driver and she was not supposed to give keys to non-drivers.  *Id*. at 109-110.

7.  She was suspended with pay on September 29, 2017, and terminated on October 10, 2017.  After FedEx suspended her, but before they fired her, she filled out an internal EEO complaint against managers Ruth Quinones, Jeffery Feurtado and Raymond Hand.  In the internal EEO complaint, she stated that she has been subjected to harassment, discrimination and retaliation based upon her race and sex.  These managers would treat her differently.  When employees would say racist things to her, they would not do anything about it, even when they witnessed it, or she complained.  And, when she reported things, she would get in trouble instead of the name callers.  Also, Raymond Hand had a picture of an African American in his office and he put his face over it, saying he was "over African Americans," and "runs them."  *Id*. at 119-123.

8.  Various FedEx employees told her that Mr. Feurtado wanted her fired.  She verbally complained about the harassment and work environment she was enduring.   She did not file written complaints because management encouraged her not to.  Also, whenever she complained to management nothing would happen.  *Id*. at 126-132.

9.  Employees would call her racist and derogatory names like Madea, Felicia, and chango, "which means monkey."  She would get called chango three or four times a month.  She would get called the other

names almost daily.  The terms Felicia and Madea are references to
movie characters depicting "low class African-Americans" like drug
addicts, or someone from a ghetto.  No one else at FedEx was called these
names.  *Id.* at 137, 284, 287.

10. She was excluded from some meetings.  Sometimes she was not the only
one excluded.  She was filled in later by management at least once.  *Id.*
at 140.

11. When employees called her racists names, on a daily basis, she did not
like it.  Sometimes she laughed it off because management was present
and did not correct the behavior.  She felt she did not have another
choice.  She did not write formal complaints because management was
aware of the racist behavior and did nothing to stop it.  She did not want
to complain too much.  She did tell manager Ruth Quinones that she was
tired of it, but Quinones did nothing. She also reported the harassment
to Mary Ann Marshall, who was in human resources ("HR"), but "not
her HR."  At first Marshall tried to investigate.  But then, Marshall told
her that her that she could not help.  Marshall was fearful.  She stated
that management asked her why she was "always bringing up Sonia."
After that, Herron stopped reporting to her.  She believes she was fired
because of her race because there were only two Black women at her
location and FedEx terminated them both.  *Id.* at 156-159, 302-304.

12. She believes she endured retaliation because she informed management
that manager Raymond Hand and two non-management employees
were taking long lunches; and, the two non-management employees
then falsified their timecards.  After she reported them, bad things began
happening to her.  She believes it is one of the reasons she was fired.  An
employee named Willie Lopez used the "N word" around her, which was
offensive.  It was also embarrassing because she was the only African
American around when he would use the word and people would turn
and stare at her.  She reported Lopez to management.  *Id.* at 169-174.[17]

13. Herron applied for management positions with FedEx through the "AIM
program."  Feurtado did not recommend her.  Instead he asked to be
called about her disciplinary history.  Manager Ruth Quinones made it
very difficult for her to apply for a management position.  When she
turned in her paperwork, Quinones stated that it had to be typed, not
handwritten.  When she asked manager Mack Gilbert to write her a
recommendation letter, he told her he could not do it because Feurtado
would not approve.  Quinones only gave her a recommendation at the
very last minute, when Herron told her that she was the only applicant
who had not received a letter.  Applicants were supposed to be mentored

---

[17] Herron states in her Complaint that she filed her allegations regarding the long lunches taken
by Raymond Hand and two non-management employees in December of 2014.  Dkt. No. 35 at 4.
She also states that she reported William Lopez for using the N-word in the spring of 2015.  *Id.*

by a manager during the application process. She did not receive help, but another applicant, Oliver Price, received assistance and was told how to answer the interview questions. Price is likely a manager now. She did not get a management position. She believes Quinones initially did not give her a letter because Feurtado was against it. The manager conducting the interview for the position told her that Feurtado had called him and spoken negatively about her. *Id*. at 181-187.

14. FedEx employee Justin Villarreal told her that Patricia Garza and Raymond Hand interviewed him for a ramp agent position. They told him what to say so that he would get the position and she would not. Garza and Hand told him that they did not want her to get the job. Villarreal told her this after he had been terminated. He also said that managers Feurtado and Michael Skinner had been involved in a coverup involving a plane and "a tray that was leaking some kind of substance . . . on people's cars and on the road[.]" *Id*. at 269-272.

15. Managers Mack Gilbert and Manuel Rodriguez took Hiram Pena's test for him when he applied for a management position and helped him get the position. She personally witnessed this. No one helped her or coached her. *Id*. at 273-274.

16. She filed an internal EEO complaint against Mack Gilbert, who was also African American, for sexual harassment. He would say inappropriate things to her when they went on "check rides." He would always ask her if she had a boyfriend and would also ask her why she did not restrict her dating to her own race. He would say her father should have spanked her for not staying within her race. He said there were lots of good Black men to date. He would say inappropriate things about dating Black men. He would always reach over her, saying he dropped things. He would get closer to her than you should get to a coworker. He was old enough to be her father. He would say things of a suggestive or sexual nature to her. When she became engaged to be married, he told her that her father should have spanked her for marrying outside of her race. She filed the internal EEO complaint when she had witnesses in the office who heard what he was saying. Once when she had an ear infection, she did not hear him and he told Raymond Hand that she was insubordinate. Hand asked her to write a statement. She wrote a statement. Later, Gilbert called her to his office, closed the door, told her that she should have just talked to him. Then he tore up her statement and told her that she needed to do what he told her to do. She needed to follow. She felt that he was suggesting that she had to comply with his advances. *Id*. at 274-275, 288-291.[18]

---

[18] Herron filed an internal EEO complaint regarding Gilbert's behavior in July of 2009. *See* Dkt. No. 53-1 at 2, ¶ 6; Dkt. No. 53-1 at 12-17. She has not produced evidence or argument indicating that any of her complaints about Gilbert's behavior are exhausted and timely before this Court.

17. When she worked on the catwalk other employees would say things about her African American butt, and call her names based on her race and sex. They would also do this when they came to the gatekeeper's office where she worked. They made these comments daily. One day when she wore her hair down, Feurtado told her she looked nice with her hair down. She felt this was inappropriate because she had not asked for this type of comment. Male employees would also come up behind her when she was picking up boxes and make inappropriate gestures. They would also say things about wanting to have sex with her, and ask her if she knew who Mandango was. She found out later that Mandango was a porn star. Another employee, Lupe Garcia, also kept trying to lock her in a vehicle with him and kiss her. He would try to lock her in the vehicle approximately twice a week. He would also pester her when she worked at the front counter in the gatekeeper's office. This persisted for five or six months. It got to the point where she would not help him in the vehicle. He also told her that he and his wife wanted a threesome with her. She reported this to Hiram Pena and Manuel Rodriguez. They encouraged her not to file a complaint. *Id.* at 278-282, 284, 291-292, 296.[19]

18. In an email Feurtado sent to Todd Bradford, he referred to her as "piss poor." This is a reference to people who would sell their urine to tanneries to tan animal skin in the 1500s. If you were piss poor, it meant you were so poor you had to sell your urine. *Id.* at 285.

19. Raymond Hand had a picture in his office depicting an African American Male kneeling down. Hand placed a picture of his own face onto the man's face in the picture. It was offensive. She was exposed to the picture every day from approximately 2014 forward. Also, when she complained about Willie Lopez's use of the N-word Feurtado told her that there was nothing he could do because Lopez was from the big city and that is how they talk. *Id.* at 282-283, 298.

20. When a new manager, Christopher Sweet, transferred into their location, he was very reserved with her and avoided speaking to her. Later, he told her that Raymond Hand told him to "stay away from the black lady, Sonia, she'll get you in trouble." *Id.* at 286.

Herron's testimony here paints an ugly picture. It describes racist and sexist behavior that is unacceptable and unlawful in the workplace. Her testimony, along with

---

[19] Herron states in her Complaint that Hiram Pena and Manuel Rodriguez encouraged her not to file a formal complaint against Lupe Garcia in 2012, or thereabouts. Dkt. No. 35 at 3-4. She has not produced evidence or argument indicating that any of her complaints about Garcia's behavior are exhausted and timely before this Court.

the entire record, also suggests that she may have prevailed against FedEx in some capacity, had she exhausted her hostile work environment claims or brought timely claims of discrimination or retaliation.[20]   With respect to her sole timely claim of retaliation, however, the Court must determine if she has presented a conflict in substantial evidence on the issue of pretext.  That is, the Court must determine if she has presented evidence of such a weight and quality that reasonable, fair-minded persons, in the exercise of impartial judgment, might reach different conclusions about whether FedEx would have fired her, but for her filing of the internal EEO complaint.

Determining the answer to this question without invading the province of the jury requires a fair degree of care.  The Court must ascertain whether the weight and quality of the evidence is sufficient to create a jury question according to reasonable, fair-minded, impartial persons, but it may not weigh the evidence or draw inferences that are reserved for the jury.  *See Anderson*, 477 U.S. 242, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citations omitted).[21]   Herron has presented evidence that:

---

[20]  The Court is only noting a possibility here; it is not expressing an opinion regarding the merits of Herron's unexhausted, untimely claims.

[21]  Some commentators have suggested that, in the summary judgment context, the *McDonnell Douglas* burden-shifting framework improperly "sanctions the drawing of inferences against the non-movant and permits the court to find facts."  *Ann C. McGinley, Credulous Courts and the Tortured Trilogy: The Improper Use of Summary Judgment in Title VII and ADEA Cases*, 34 B.C. L. Rev. 203, 233 (1993).  *See also Summary Judgment in Civil Rights Cases—Introduction, Summary Judgment*, Federal Law and Practice § 9:8 (noting that some courts "have little trouble using a substantive burden shifting analysis to grant summary judgment despite the alleged presence of material factual issues concerning motive.").

1. She filed an internal EEO complaint alleging discrimination and retaliation based on race and sex on October 9, 2017. Dkt. No. 71-1 at 120-122; Dkt. No. 72 at 110-115.

2. She filed this internal EEO complaint "against managers Ruth Quinones, Raymond Hand, and Jeffery Feurtado," seeking their removal. Dkt. No. 72 at 112, 115.

3. FedEx fired her the next day on October 10, 2017. *See* Dkt. No. 53-6 at 33-34; Dkt. No. 71-1 at 120-122.

4. Manager Ruth Quinones made the decision to fire Herron, and Jeffery Feurtado signed the letter of termination. Dkt. 53-5 at 4; Dkt. No. 53-6 at 4.

5. FedEx fired her while Raymond Hand was one of her managers, and she had previously overheard him say he was "over" African Americans and "runs them." Dkt. No. 71-1 at 122.

6. FedEx fired her after she had complained of racist and sexist harassment on more than one occasion, and after management failed to stop the harassment. *Id*. at 120-123.

7. FedEx treated her differently than other employees, some of whom may have been similarly situated to her. *See, e.g. id*. at 119-123, 140, 156-159, 181-187, 269-272, 273-274, 302-304.[22]

Conversely, as already summarized above, FedEx has produced evidence indicating that:

1. It fired Herron due to her "continued disruptive behavior[.]" Dkt. No. 53-6 at 33.

2. FedEx's Acceptable Conduct Policy provides that an employee may be fired for disruptive conduct. *Id*. at 22.

3. Herron engaged in a minimum of ten different instances of disruptive conduct in the last five years of her employment. *See Supra* at pgs. 33-34 (summarizing FedEx's evidence of Herron's misconduct).[23]

---

[22] Herron has not met her burden by showing disparate treatment. Although she identifies many coworkers by name, she has not produced evidence showing that these coworkers were her comparators or otherwise similarly situated to her. *See generally* Dkt. Nos. 35, 71, 71-1, 72, 73, 74.

[23] None of these instances of disruptive behavior involved Herron reporting discrimination, or otherwise engaging in protected activity under the Act. *See Supra* at pgs. 33-34.

Herron herself has also presented evidence indicating that retaliation for her filing of the internal EEO compliant, or any other protected activity, was not the "but for cause" of her termination.  For example, Herron has testified or stated that:

1. She believed that she was fired, in part, because she had informed management that manager Raymond Hand and two non-management employees were taking long lunches.  Dkt. No. 71-1  at 170-71 ("Do you believe that one of the reasons you were fired was because you made this complaint? [Answer:] Yes.").  She stated that after she made this report, bad things began happening to her at work.  *Id*. at 170 (The retaliation, ma'am, I noticed that after I complained on them a lot more stuff was happening.").

2. She believed she was retaliated against by Jeffery Feurtado because she had seen a document that he did not want her to see.  Specifically, she had seen a document on her printer pertaining to a court date for his son having to do with alleged marijuana possession.  When she gave him the document, he gave her a look indicating that he was not pleased about her having seen the document.  After that, he would constantly "elevate" things when it came to her.  *Id*. at 121-122, 124.

3. She believed that Jeffery Feurtado also retaliated against her because she reported Raymond Hand and the two non-management employees who were taking long lunches.  Dkt. No. 72 at 131, 132 ("I have noticed that Jefferey Feurtado from that point on has discriminated, retaliated, and slandered my name throughout this company, all because I reported something that I saw as wrong.").

4. She informed those in charge of reviewing her termination at FedEx that "all this stems from me reporting Manager Raymond Hand, his brother-in-law Rodolfo Coronado, and his drinking buddy Aldo Tamez in 2015 for falsification of their time cards."  Dkt. No. 72 at 81 (containing her "Step 2 GFTP Form" dated October 30, 2017, which also states that "Raymond Hand, Jeffrey Feurtado, Rodolfo Coronado and Aldo Tamez went on a witch hunt to find out who told on them.").[24]

Herron has also submitted evidence that supports, rather than undermines, FedEx's argument that she had a pattern of disruptive conduct and continuously

---

[24]  In this Step 2 GFTP Form, Herron argues that she should not have been terminated and complains about being treated unfairly.  But, she does not mention any retaliation or discrimination based upon her race or sex.

"schemed to get co-workers in trouble[.]  Dkt. No. 53 at 6 ("Plaintiff actively schemed to

get co-workers in trouble, checking-up on her peers and compiling information to use

against them.  She started rumors and spread gossip.  Her complaint history at FedEx

shows that no one was immune from her criticism . . .").  For example, Herron has

submitted evidence that:

1. She complained in writing about three different FedEx employees in
February and March of 2012.  Among other things she stated that these
three employees engaged in activities that prevented the timely
completion of duties in her department.  Dkt. No. 72 at 62-63 ("Todd,
Oliver and Gloria need to realize that we as CSA have work on our plate
. . . . I have noticed that they do not make an effort to use time wisely so
we can all finish our task.  Oliver wants to watch TV and talk on his
cellphone and Gloria is trying to be a therapist.") (errors in original).

2. She sent an email to Ruth Quinones on June 15, 2016, bearing the
subject line: "Common Courtesy."  Dkt. No. 72 at 69.  In the email, she
complains that a coworker refused to help a customer and conducted
himself in a discourteous and unprofessional manner.  *Id.*  ("I am writing
to you because of an issue that keeps arising . . . I spoke to you twice, on
May 18, 2016 and one other time that I have written down in reference
to the unprofessionalism of Oliver Price.") (errors in original).

3. She complained to Ruth Quinones on June 24, 2016, about Oliver Price
belching, passing gas, playing songs with profanity on his phone, and
otherwise being unprofessional at work.  Dkt. No. 72 at 70.

4. She sent an email to Ruth Quinones on June 24, 2016, complaining
about a "Break Issue."  Dkt. No. 72 at 72 ("I am writing to you again
about a scheduling issue.  Yesterday, June 23, 2016, I was waiting to go
on break at 11.  I was for Oliver Price to get here.  He finally came in to
relieve me at 11:07.  I later found out that he clocked in at 10:58 and went
to the break room to eat his food on the clock.  There was a witness to
him in the breakroom eating.  I would like to know since when is this
okay to come clock in and eat on the clock first before beginning a shift,
and still take a lunch?") (errors in original).

5. She complained in writing, anonymously, to "Ms. Sweat," about Ruth
Quinones.  Dkt. No. 72 at 74 ("I am sending you this letter to bring to
your attention the unprofessionalism of HRLA Operations Manager,
Ruth Quinones.  I feel it is unprofessional, and unethical for a member
of the management team to offer 16 bottles of beer to an employee, and
socialize outside of work, and on social media with certain employees. .

. .").  *See also* Dkt. No. 71 at 101-102 (containing Herron's testimony that she wrote the written complaint against Quinones anonymously).

6. She filed a workplace violence complaint against Belinda Garza for verbally attacking her so close that Garza's spit got on Herron's face. Dkt. No. 72 at 82.  She also reported to someone in management on May 12, 2016, "that Raymond Hand told Belinda Garza to hang in there she will be full time soon."  Dkt. No. 72 at 85.

7. She "reached out to OSHA" because Jeffrey Feurtado's best friend Jaime won the bid to rebuild the FedEx facility after Hurricane Harvey, but Jaime smoked near "all the fuel from the plane and equipment" at the facility.  Dkt. No. 74 at 47.  *See also id.* at 49 (containing OSHA's letter to Herron dated April 25, 2016, stating that it did not have jurisdiction to pursue her complaint).

In addition to submitting evidence that undermines her retaliation claim, Herron has also largely failed to challenge FedEx's disruptive-conduct evidence.  Although she provides some justifying, mitigating explanations for her conduct in her deposition, neither her Complaint nor her Response show that a material question of fact exists with respect to whether FedEx's characterization of her conduct is false.  *See generally* Dkt. Nos. 35 and 71.  Moreover, although Quinones and Feurtado effectuated her termination, Herron has presented no evidence to show that Quinones or Feurtado were aware that she had filed an internal EEO complaint on October 9, 2010.[25]  Herron has also presented no evidence showing that someone else with retaliatory animus influenced Quinones or Feurtado's decision to fire her.  Thus, even under the "cat's paw theory of liability,"[26] Herron has failed to produce evidence indicating that her termination was causally related to the retaliatory animus of someone who knew that she had filed the internal EEO

---

[25]  In their affidavits, Quinones and Feurtado do not explicitly deny knowing about the internal EEO complaint, but nothing in their affidavits suggest that they knew.  Dkt. 53-5 at 2-5; Dkt. No. 53-6 at 2-5.

[26]  "The 'cat's paw' theory recognizes that the discriminatory animus of a manager [or employee] can be imputed to the ultimate decision maker if the decision maker acted as a rubber stamp, or the cat's paw, for the subordinate employee's prejudice."  *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 914 (S.D. Tex. 2007) (citations and internal quotations omitted).

complaint. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (noting that, when evaluating a Title VII retaliation claim, courts must "look to who actually made the decision or caused the decision to be made"); *Brown*, 969 F.3d 571, 577 (same); *Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 344 (5th Cir. 2012) (same, unpublished); *Flowers*, 391 F. Supp. 3d 655, 670 (same); *Standley v. Rogers*, 202 F. Supp. 3d 655, 670 (W.D. Tex. 2016) ("To establish a causal link, a plaintiff must produce evidence demonstrating that the materially adverse action was taken at least in part on the knowledge of the plaintiff's [protected] activity.") (internal citations and quotations omitted).

Having considered all relevant evidence, then, in addition to Herron's arguments, the Court is forced to conclude that Herron has not met her burden.  Specifically, Herron has failed to present evidence of such a weight and quality that reasonable, fair-minded, impartial persons might conclude that FedEx would not have fired her, but for her filing of the internal EEO complaint.  At best, construing all inferences in her favor, she has produced evidence indicating that the filing of her internal EEO complaint may have been one of the reasons FedEx terminated her employment.  Unfortunately for Herron, this does not allow her to proceed past summary judgment. *See Flowers*, 391 F. Supp. 3d 655, 667, n. 19 ("A plaintiff cannot show causation or pretext in a retaliation claim by relying on the mixed-motive analysis.  [*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362-63].  Rather, protected activity must be a but for cause of the retaliatory conduct[.]"). Accordingly, Herron has failed to present a material question of fact on the issue of pretext and her retaliation claim fails.

For the foregoing reasons, Herron's Complaint is subject to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. Rule 56.

## V.  Recommendation

It is recommended that the Court **GRANT** FedEx's Motion for Summary Judgment (Dkt. No. 53) and **CLOSE** this civil action.

## VI.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **30th** day of **July, 2021**, at Brownsville, Texas.

_____

**Ignacio Torteya, III**
**United States Magistrate Judge**